IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MISTY ANDREWS,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 5:25-CV-02536-BYP<br><br>JUDGE BENITA Y. PEARSON.<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Plaintiff Misty Andrews challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB). (ECF #1) The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry of Nov. 21, 2025). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Ms. Andrews applied for DIB on April 11, 2023, alleging disability beginning April 4, 2023. (Tr. 185). After her claim was denied initially and on reconsideration, Ms. Andrews requested a hearing before an Administrative Law Judge. (Tr. 82, 90, 98). On September 23, 2024, Ms. Andrews (represented by counsel) and a vocational expert (VE) testified before the ALJ. (Tr. 33-61). On November 7, 2024, the ALJ determined Ms. Andrews was not disabled. (Tr. 17-27). On September 24, 2025, the Appeals Council denied Ms. Andrew's request for review of the

ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. § 404.981). Ms. Andrews timely filed this action. (ECF #1).

## FACTUAL BACKGROUND

### I. Personal and Vocational Evidence

Ms. Andrews was 42 years old on the alleged onset date and 43 years old at the administrative hearing. (*See* Tr. 62, 40). She holds a GED and has past relevant work experience as an injection-molding machine operator. (*See* Tr. 41, 55-56).

### II. Relevant Medical Evidence[1]

In November 2020, Ms. Andrews was diagnosed with Kienböck's Disease after an x-ray of her left wrist found a collapsed lunate bone, the main characteristic of the disease.[2] (Tr. 503; *see also* Tr. 500). She reported experiencing pain in both wrists for about a month; she previously had de Quervain's tendinosis in her left wrist that was treated by surgery in 2019.[3] (*See* Tr. 498). She tried using a wrist brace and over-the-counter pain relievers, but they had limited effect. (*Id.*). She also reported similar but less intense pain in her right wrist. (*Id.*). An x-ray revealed a "[n]ormal right wrist." (Tr. 502). She was diagnosed with osteoarthritis in her right wrist. (Tr. 500). Ms.

---

[1] Although Ms. Andrews claimed disability due to various physical and mental impairments, her arguments challenge solely the ALJ's evaluation of her impairments in handling and fingering. I limit my discussion of the record accordingly.

[2] Kienböck's Disease is a condition characterized by a progressive breakdown of the lunate, a small crescent-shaped bone in the wrist, resulting in wrist pain, swelling, stiffness, or weakness and potentially arthritis and the death of the bone. *See Kienböck's Disease*, *Cleveland Clinic*, http://my.clevelandclinic.org/health/diseases/21996-kienbocks-disease (last accessed Oct. 13, 2026).

[3] De Quervain's tendonitis (or tendosynovitis) is a condition characterized by swelling in the sheath covering the tendons in the thumb, which causes painful wrist movements. It can be treated with a wrist brace or outpatient surgery. *See de Quervain's Tendinosis*, *Cleveland Clinic*, http://my.clevelandclinic.org/health/diseases/10915-de-quervains-tendinosis (last accessed Oct. 13, 2026).

Andrews was advised to continue with intermittent bracing and "home symptomatic relief efforts" and to follow up as needed. (*Id.*).

Ms. Andrews next presented for treatment of her wrist pain in September 2022. (Tr. 298). A physical examination noted tenderness to palpation of her radiocarpal joint; pain with palpation over the carpometacarpal (CMC) joint in her thumb; full range of motion, wrist strength, and finger flexion and extension; intact sensation; and a positive thumb CMC grind test (indicating arthritis in that joint). (Tr. 300). X-ray imaging taken the same day revealed osteonecrosis of the lunate with sclerosis and collapse. (Tr. 316-17). Ms. Andrews was advised to wear a thumb and wrist brace and a wrist splint, continue taking Mobic (a nonsteroidal anti-inflammatory drug), and follow up in eight weeks. (Tr. 298). She followed up later in September. (Tr. 302). A physical examination yielded the same findings as earlier in the month. (*Compare* Tr. 330 *with* Tr. 300). She received a corticosteroid injection in her left thumb and reported wanting to schedule surgery in two to three months. (Tr. 328).

In January 2023, Ms. Andrews returned where she reported the first injection "helped a lot" so she wanted another injection. (Tr. 331). She also wanted to plan surgery after the second injection. (*Id.*). A physical examination again noted the same findings as the two examinations in September: tenderness to palpation of the radiocarpal joint; pain with palpation over the CMC joint; full range of motion, wrist strength, and finger flexion and extension; intact sensation; and a positive thumb CMC grind test. (Tr. 333, *see also* Tr. 300, 330).

After surgical consultation in March 2023, Ms. Andrews decided to proceed with surgery. (Tr. 339). A physical examination again noted the same findings as the three previous examinations. (Tr. 341; *compare* Tr. 300, 330, 333).

On April 4, 2023 (the day she listed her disability beginning), Ms. Andrews underwent two surgical procedures: (1) a left-thumb CMC arthroplasty (involving the removal of the arthritic trapezium bone at the base of the thumb) with an FCR tendon transfer suspension plasty (replacing the gap from the removed trapezium with a wrist tendon) and (2) a left row proximal carpectomy with wrist denervation (involving the removal of the scaphoid, lunate, and triquetrum bones in the wrist). (*See* Tr. 494-95). The surgeon described Ms. Andrews' lunate as "very arthritic and delaminated." (Tr. 495). Ms. Andrews returned for a post-surgery follow-up visit on April 17. (Tr. 342). She reported doing well, her pain was controlled, and no numbness or tingling. (*Id.*). She was prescribed Norco, a prescription pain medication. (*Id.*). A postoperative physical examination noted intact sensation and full range of motion, stability, and strength. (Tr. 344).

Ms. Andrews returned for a six-week post-surgical visit on May 24, 2023. (Tr. 385). She again reported doing well, her pain was controlled, and she had no numbness or tingling; she had been wearing her splint/cast as directed; and she began occupational therapy. (*Id.*). A physical examination noted a decreased range of motion, full stability and strength, intact sensation, and healing without complication. (Tr. 387). She was prescribed Tramadol, an opioid. (Tr. 385).

Ms. Andrews followed up as instructed again in July. (Tr. 389). She reported wearing her splint as directed and was feeling much better though she was still experiencing pain. (*Id.*). She feared lifting weight as it felt like her wrist would break again. (*Id.*). A physical examination yielded similar findings to May: decreased range of motion, full stability and strength, intact sensation, and healing without complication. (*Compare* Tr. 392 *with* Tr. 387).

Though Ms. Andrews was instructed to follow up in six weeks' time, the next treatment note in the record for her wrists is nine months later, in April 2024. (Tr. 490). There, she reported

pain in the base of her right thumb and middle finger along with catching, clicking, and locking. (*Id.*). She described the pain as a dull ache that was sharp at times, especially when her fingers locked. (*Id.*). She reported her pain worsened over the past few weeks and it worsened with activities such as opening bottles and jars and gripping items. (*Id.*). A physical examination noted pain with palpation over the thumb CMC joint, full range of motion, stability, and strength; intact sensation; and a positive thumb CMC grind test. (*Id.*). X-ray imaging of her right hand showed minimal arthritic changes and no fractures or dislocations. (Tr. 491). Ms. Andrews was diagnosed with CMC degenerative joint disease in her right thumb and trigger finger in her right middle finger. (Tr. 490). Ms. Andrews received a corticosteroid injection in her right thumb CMC joint. (Tr. 491).

**III. Opinion Evidence**

On May 26, 2023, state agency medical consultant Steve McKee, M.D., reviewed Ms. Andrews' file and opined she can lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for about six hours each in an eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally crawl; and frequently handle and finger with her left hand. (Tr. 68-70).

On reconsideration review on January 18, 2024, state agency medical consultant Rannie Amiri, M.D., reviewed updated medical records and opined Ms. Andrews can lift and carry 20 pounds occasionally and 10 pounds frequently; frequently climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently kneel and crouch; occasionally stoop and crawl; frequently handle with her left hand; is unlimited in fingering with either hand; and must avoid all exposure to workplace hazards like machinery and unprotected heights. (Tr. 78-80).

## IV. Testimonial Evidence

Ms. Andrews explained she cannot work in part due to a severely limited range of motion in her left hand since several bones were surgically removed. (Tr. 42). Her pain in her left hand is worse. (*Id.*). She is right-handed. (*Id.*). Her hands cannot go side-to-side anymore. (*See* Tr. 48). The fingers in both hands randomly lock up between the first and second knuckle. (Tr. 42-43). Cramping in her hands and wrists also prevents her from typing. (Tr. 43). She estimates she can comfortably lift and carry at most four pounds. (*Id.*).

Ms. Andrews cannot grip anything tightly or open jars, things easily fall out of her hand, and it is painful to perform basic tasks such as putting on clothes. (Tr. 42, 48). She cannot rotate her wrists to turn buttons. (*See* Tr. 49). She accommodates these limitations by not buying jarred foods, clothes with zippers and buttons, or dishes that must be hand-washed. (Tr. 49, 50-51).

Ms. Andrews has had injections and surgery on both hands. (Tr. 42). She takes over-the-counter pain medications. (Tr. 44). She previously took prescription pain medications but stopped since stricter addiction controls were put in place. (*Id.*). Though she is not used to the pain, Ms. Andrews has lived with it for as long as she can remember. (Tr. 52). She described the pain in her hands as sharp and burning. (*Id.*).

Ms. Andrews can drive but does not do so often or travel very far. (Tr. 47). She has difficulty with household chores that involve being on her feet, such as vacuuming, washing dishes, and cooking. (*Id.*). She cannot do any chores on the floor, such as dusting or scrubbing the floor. (*Id.*). She reads and likes to crochet, but she cannot hold the yarn or needles anymore. (Tr. 47-48).

The VE testified that if an individual with Ms. Andrews' age, education, and experience and the RFC the ALJ ultimately found for Ms. Andrews but who was additionally limited to

occasionally using the left arm (as opposed to frequently), there would be a limited number of both light and sedentary jobs for that person. (*See* Tr. 58, 56; *compare* Tr. 21-22). Though the ALJ did not ask for specific jobs, the VE estimated there would be under 6,000 total sedentary jobs and under 6,000 total light jobs. (Tr. 58).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?
2. Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?
3. Does the severe impairment meet one of the listed impairments?
4. What is claimant's residual functional capacity and can claimant perform past relevant work?
5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this sequential analysis, the claimant has the burden of proof through Step Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's

RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. § 404.1520(c)-(f); *see also Walters*, 127 F.3d at 529.

## The ALJ's Decision

At Step One, the ALJ determined Ms. Andrews had not worked since the alleged onset date. (Tr. 19). At Step Two, the ALJ identified degenerative joint disease of both wrists, obesity, degenerative disc disease of the lumbar spine, and bipolar disorder as severe impairments. (*Id.*). At Step Three, the ALJ found Ms. Andrews' impairments did not meet or medically equal the requirements of a listed impairment. (Tr. 20-21). At Step Four, the ALJ determined Ms. Andrews' RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift up to 20 pounds occasionally and up to 10 pounds frequently; the claimant can sit, stand and walk for six out of eight hours each per workday; the claimant is limited to frequent operation of hand controls with the left upper extremity; the claimant is unable to climb ladders, ropes or scaffolds; the claimant can occasionally climb ramps and stairs; the claimant can occasionally balance, stoop, kneel, crouch, or crawl; the claimant is limited to frequent bilateral handling and fingering; the claimant must avoid all exposure to hazards such as unprotected heights and dangerous moving machinery; the claimant is limited to occasional interaction with the public, coworkers, and supervisors; and no more than occasional changes within a routine work setting.

(Tr. 21-22). The ALJ then found Ms. Andrews could not perform her past relevant work as an injection-molding machine operator. (Tr. 25-26). At Step Five, the ALJ found Ms. Andrews could perform other work, including as a housekeeper and marker. (Tr. 26). Thus, the ALJ concluded Ms. Andrews was not disabled. (Tr. 27).

## Standard of Review

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters,* 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not follow its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## Discussion

Ms. Andrews captions her argument with this heading:

> **The ALJ's Decision Does Not Contain a Rationale and Reference to the Evidence that Supports the RFC pursuant to SSR 96-8p. The ALJ did not evaluate the objective evidence properly and failed to consider an assistive device and obesity.**

(ECF #8 at PageID 557). But the body of her argument contends the ALJ should have found she can use her left arm at most occasionally as opposed to frequently. (*Id.* at PageID 557-60).

I recommend the District Court find both arguments referenced in the brief's heading to be waived. Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir.

1997). For the argument the ALJ erred in evaluating whether Ms. Andrews needs an assistive device, there is no evidence Ms. Andrews uses an assistive device, nor does she explain how she medically requires one under Social Security regulations. For the argument the ALJ misevaluated her obesity, though Ms. Andrews is obese, the ALJ found her obesity to be a severe impairment (Tr. 19), and the ALJ considered the adverse effect that impairment has on her other impairments as required by Social Security Ruling 19-2p (Tr. 23). Ms. Andrews does not explain how the ALJ erred in this analysis beyond mere assertion. For these reasons, I recommend the District Court find both arguments waived.

Turning to the argument in the body of the brief, Ms. Andrews argues the medical evidence and her testimony support a limitation to occasional use of her left arm. (ECF #8 at PageID 557-60). The Commissioner responds that substantial evidence supports the RFC, the evidence on which Ms. Andrews relies is not relevant because it was from before she claimed her disability began, and even if relevant, the court cannot reweigh the evidence and decide the RFC anew. (ECF #9 at PageID 569-72).

The RFC is an assessment of the most an individual can still do despite her limitations, or more specifically, the extent to which an individual's impairments and related symptoms, including pain, may cause physical or mental limitations or restrictions that affect her capacity to do work-related physical or mental activities. 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It is "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2. The

assessment is based on all relevant evidence. 20 C.F.R. § 404.1545(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *2, *5.

In support of her argument, Ms. Andrews begins by pointing out that while she testified her pain is worse in her left wrist than her right, the ALJ cited objective findings that only analyzed her right wrist. (ECF #8 at PageID 559) (citing Tr. 42, 490-91). However, it would be expected that the ALJ would analyze Ms. Andrew's right wrist because she is right-handed. (Tr. 42). The ALJ also did not misread the treatment notes nor hide that the ALJ was discussing Ms. Andrews' right hand:

> For example, a physical examination performed in April of 2024 revealed that the claimant was alert and oriented to all spheres, in no acute distress, and *in the right hand*, motor strength was five out of five, grip strength was five out of five, and sensation to light touch was intact distally. Likewise, *x-rays of the right hand* performed at this time showed no fractures or dislocations, and there were only "minimal" arthritic changes of the thumb CMC joint.

(Tr. 24) (emphasis added; record citations omitted).

Nor did the ALJ ignore Ms. Andrews' left wrist condition. The ALJ also noted:

> The claimant underwent surgery at University Hospitals Orthopedics on April 4, 2023 for a left thumb carpometacarpal arthroplasty with FCR tendon transfer suspension plasty, and left row proximal carpectomy with wrist denervation. In July of 2023, the claimant presented to Dr. Walter at University Hospitals Orthopedics for a post-surgical follow up visit regarding osteoarthritis of the CMC joint of the left wrist. According to the claimant, she was feeling much better since her wrist surgery, but she still had some pain, she was worried about lifting things because she feared her wrist would break, and she was progressing in her physical therapy sessions.

(Tr. 23) (citing Tr. 494, 389).

Ms. Andrews correctly points out the ALJ did not mention that the physical examination found a decreased range of motion. (ECF #9 at PageID 559) (citing Tr. 392). She also points to other treatment notes from November 2020, September 2022, and January, March, May, and July

2023 as supporting greater limitations with her left arm. (*Id.* at PageID 559-60) (citing Tr. 503, 316-17, 291, 287, 387, 392).

In determining whether substantial evidence supports the Commissioner's findings, the court may not review the evidence de novo or weigh the evidence. *Brainard*, 889 F.2d at 681. Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477.

Substantial evidence supports the RFC. There is ample case law concluding that state agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision. *Maldonado o/b/o A.C. v. Kijakazi*, No. 4:20-cv-1878, 2022 WL 361038, at *6 (N.D. Ohio Jan. 14, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 356557 (N.D. Ohio Feb. 7, 2022). The ALJ found the two state agency medical consultants' opinions persuasive. (Tr. 25). The opinion on initial review in May 2023 found Ms. Andrews can frequently handle and finger with her left hand and was based on the treatment notes in the lead up to and immediately after Ms. Andrews' left-hand surgeries. (Tr. 69-70). Then, on reconsideration review in January 2024, the state agency medical consultant found Ms. Andrews was *less limited*: she could frequently handle with her left hand and is not limited in fingering with either hand. (Tr. 79). To the consultant, Ms. Andrews' surgery was successful and did not implicate her ability for fine manipulation with her fingers. (Tr. 80). The ALJ then found a more restrictive RFC than both consultants, limiting Ms. Andrews to frequent handling and fingering with both hands. (Tr. 21-22). Regardless of whether the treatment notes Ms. Andrews cited may support greater limitations, the state agency consultants' opinions (which were based on much of the same evidence) provide

substantial evidence for the ALJ and thus the ALJ's findings "shall be conclusive." *McClanahan*, 474 F.3d at 833 (citing 42 U.S.C. § 405(g)). I thus decline to recommend remand on this basis.

## CONCLUSION AND RECOMMENDATION

After reviewing the record, the parties' arguments, and the law, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits.

Dated: October 15, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).